IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TERRANCE REESE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-cv-01054 |
| | ) | Judge Crenshaw/Frensley |
| CORECIVIC, INC., et al., | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This prisoner 42 U.S.C. § 1983 action is before the court on defendants' motion for summary judgment. Docket No. 26. The motion is fully briefed and ready for disposition. After reviewing the record and the briefs, for the reasons set forth below, the undersigned recommends that Defendants' motion for summary judgment be **GRANTED** and the action be dismissed.

### I. BACKGROUND

Plaintiff Terrance Reese ("Plaintiff" or "Reese"), a former inmate at the Trousdale Turner Correctional Center ("Trousdale"), filed this pro se action alleging Defendants failed to protect him in violation of his Eighth Amendment rights. Plaintiff's allegations concern events that occurred in August 2023 when he was a minimum-custody inmate at Trousdale.

Plaintiff alleges the following facts. Docket No. 1. He was robbed on August 4, 2023, by four medium-custody inmates who forced him from his cell at knife point, proceeded to steal his television, shoes, and the food in his cell, and then told Plaintiff he had to leave the building. Docket No. 1, p. 6. Plaintiff reported the incident to the officer on duty in the pod, who attempted to contact Chief of Security, Jermaris Porter. Id. Another officer, Officer Christian, then told Plaintiff that she had contacted Porter and explained to him what had occurred, but Porter did not respond. Id. Jacqueline Norman, Assistant Warden, was then advised of the situation and told

Plaintiff that she would get him out of the building "as soon as the count was cleared," however, she did not do so. Id. at pp. 6-7. After several hours without an official response, Sgt. Smith took Plaintiff to a recreation cage outside of the building and told him that that he (Sgt. Smith) would inform Captain Ajee Smith of the situation. Id. at p. 7. Hours later Sgt. Smith returned Plaintiff back inside the building, stating that Captain Smith instructed him to do so because she did not have time to address the situation at that time. Id.

On August 8, 2023, Plaintiff was robbed again.[1] Id. at p. 7. He spoke with Ramona Johnson, Unit Manager, "day after day" and plead with her to move him to a different building because the inmates who had assaulted and robbed him continued to harass him in retaliation for filing an incident report against them. Id. Officer Johnson refused to move Plaintiff and threatened to send him to "the hole" if he continued to complain. Id. He then wrote Warden Vincent Vantell, complaining about the situation and asking to be moved but did not receive a response. Id. at p. 8. He was ultimately transferred to a different pod in the same building, "right next door" to the pod where he was assaulted and robbed. Id. The four inmates who robbed him can come and go in Plaintiff's new pod, where they sell drugs and rob other people. Id. On August 18, 2023, an associate of the four original inmates who robbed him entered his cell, threatened him with a knife, and told him "to stop running [his] mouth to the officers about . . . being robbed." Id.

Plaintiff alleges CoreCivic has policies mandating that medium-custody inmates are not to be housed together with minimum-custody inmates, as well as prohibiting inmates from entering a pod where they are not housed. He alleged these policies are ignored and that his pleas went ignored. Id. at pp. 8-9. Reese named as defendants CoreCivic, Inc. ("CoreCivic") and individual

---

[1] Plaintiff does not specify who committed the robbery or whether a weapon was involved.

defendants Porter, Norman, Smith, Johnson, and Vantell.[2] He alleges the individual defendants were aware that he was assaulted and robbed and failed to act. Id. Plaintiff seeks damages. Id. at p. 10.

On initial review, the district judge concluded Plaintiff failed to state a plausible failure-to-protect claim against CoreCivic and dismissed it from the action. Docket No. 5, p. 7. The district judge concluded the Complaint alleged colorable failure-to-protect claims against the individual defendants. Id. p. 8.

The instant motion followed. Defendants argue Reese cannot hold them liable on a supervisory liability theory. Docket No. 26, p. 2. They argue Reese cannot establish that they encouraged the alleged specific instances of misconduct or in some other way directly participated in them. Id. They argue the evidence demonstrates Defendants did not condone or have any involvement in certain of the occurrences that are alleged in this lawsuit, specifically permitting inmates to move from one housing unit to another. Id. They argue summary judgment should therefore be granted on Reese's claim that Defendants permitted inmates to move from one housing unit to another housing unit. Id.

Defendants further argue Reese's failure-to-protect claim fails because the evidence establishes, they were not deliberately indifferent to his safety and security, specifically, they did not fail to protect him from known threats by or theft of other inmates. Id. In support of their motion, defendants submitted as evidence their sworn declarations. Docket Nos. 29-31. The evidence proffered by defendants reveals the following.

Jermaris Porter is a current CoreCivic employee and was chief of security at Trousdale

---

[2] While named as defendants, Johnson and Norman were not served with summons and complaint. Docket No. 7.

during the time of the incident at issue. Docket No. 29, p. 1. While Plaintiff was housed at Trousdale, he undertook to provide a safe and secure environment for all inmates at Trousdale, including Plaintiff. Id. He regularly conducted rounds in the housing units at Trousdale and continuously monitored the housing units for any indication that inmates were distressed or fearful and, correspondingly, for any indication that inmates were agitated or violent. Id., at p. 2. He was available to inmates, including Plaintiff, if they had concerns or needs, and would immediately have addressed any request for protection from other inmates. Id.

The cell/bed assignment from Trousdale demonstrates that Reese was housed in Unit Delta Bravo from February 15, through August 6, 2023, and that he was transferred to Unit Delta Alpha on August 6, 2023, two days after he asserts, he was robbed. Docket No. 29, p. 3. He did not ignore Reese's requests for help; the brief period between Reese's request for help and his transfer to a different housing unit establishes that a member of the security team, whether it was him or another member of the security team, requested Reese's transfer. Id. This was a proper course because it placed concrete walls and locked doors between Reese and his aggressors. Id.

Unit Delta Bravo and Unit Delta Alpha are two separate housing units divided by concrete walls and two separate locked doors. Id. Inmates are not permitted to freely move from one housing unit to another or permitted to enter housing units to which they are not assigned unless under limited circumstances, for example, if an inmate is a member of the maintenance crew. Id. Inmates from Unit Delta Bravo should not have been permitted to enter Unit Delta Alpha, and he would not have instructed security personnel to permit this conduct and likewise would not have condoned this conduct. Id.

Ajee Smith served as a member of the security team at CoreCivic and was a captain during the relevant timeframe. Docket No. 30, p. 1. She worked to provide a safe and secure environment

4

for the inmates at Trousdale, including Reese. Id. She frequently conducted rounds in the housing units at Trousdale and regularly monitored the housing units for any indication that inmates were distressed or fearful or that inmates were agitated or violent. Id. She routinely talked to other members of the security team, including correctional officers who were stationed inside the housing units, to determine if there were issues that required her attention. Id. at pp. 1-2. This included issues of theft, threats, or violence, all of which received her prompt attention. She was available to inmates, including Reese, if they had concerns or needs. Id. at p. 2. If an inmate expressed concern regarding theft, threats, or violence, she did not ignore the concern. Id. She maintained a set procedure in such instances that allowed her to assess the situation and to help provide for the safety and security of the inmate. Id. In such instances, she would remove the inmate from the housing unit from which the threats and violence originated and place the inmate into another housing unit pending an investigation, whether through the protective custody process or otherwise. Id. at p. 2.

With respect to the incident on August 4, 2023, she would not ignore a sergeant's decision that an inmate needed protection, an inmate in Reese's position, Reese's request for protection, or any danger to Reese that she perceived. Id. Reese's cell bed reassignment demonstrates that she did not ignore Reese's requests for help, because the short amount of time between when Reese asked for help and when Reese was transferred effectively establishes that a member of the security team, whether it was her or another member of the security team, requested Reese's transfer. Id. This was a proper course. Id. at p. 2.

Ajee attested that she would not have instructed security personnel to permit conduct of inmates moving freely amongst housing units and would not have condoned this conduct. Id. at p. 3. She was not personally responsible for permitting inmates to enter or exit housing units; it is

5

for the inmates at Trousdale, including Reese. Id. She frequently conducted rounds in the housing units at Trousdale and regularly monitored the housing units for any indication that inmates were distressed or fearful or that inmates were agitated or violent. Id. She routinely talked to other members of the security team, including correctional officers who were stationed inside the housing units, to determine if there were issues that required her attention. Id. at pp. 1-2. This included issues of theft, threats, or violence, all of which received her prompt attention. She was available to inmates, including Reese, if they had concerns or needs. Id. at p. 2. If an inmate expressed concern regarding theft, threats, or violence, she did not ignore the concern. Id. She maintained a set procedure in such instances that allowed her to assess the situation and to help provide for the safety and security of the inmate. Id. In such instances, she would remove the inmate from the housing unit from which the threats and violence originated and place the inmate into another housing unit pending an investigation, whether through the protective custody process or otherwise. Id. at p. 2.

With respect to the incident on August 4, 2023, she would not ignore a sergeant's decision that an inmate needed protection, an inmate in Reese's position, Reese's request for protection, or any danger to Reese that she perceived. Id. Reese's cell bed reassignment demonstrates that she did not ignore Reese's requests for help, because the short amount of time between when Reese asked for help and when Reese was transferred effectively establishes that a member of the security team, whether it was her or another member of the security team, requested Reese's transfer. Id. This was a proper course. Id. at p. 2.

Ajee attested that she would not have instructed security personnel to permit conduct of inmates moving freely amongst housing units and would not have condoned this conduct. Id. at p. 3. She was not personally responsible for permitting inmates to enter or exit housing units; it is

5

the responsibility of correctional officers. Id.

Vincent Vantell previously served as Warden at Trousdale. Docket No. 31, p. 1. He worked to provide a safe and secure environment for the inmates there, mandating that security personnel regularly conduct rounds in the housing units and frequently monitor the housing units for any indication that inmates were distressed or fearful and, correspondingly, for any indication that inmates were agitated or violent. Id. at pp. 1-2. He routinely spoke with members of the security team to determine if there were issues that required his attention. Id. at p. 2. He was available to inmates if they had concerns or needs. Id. If an inmate expressed concern regarding inmate-on-inmate theft, threats, or violence, he did not ignore the concern. Id. Rather, he maintained a set procedure in such instances that allowed him or another member of the security team to assess the situation and to help protect the inmate. Id. If he received an inmate request form, he would review the form and either answer the inmate's request himself or provide the form to an individual who could address the issue. Id. For issues like those presented in this case, he would have provided the complaint to the unit manager for the inmate's housing unit and would have asked the unit manager to handle the complaint in an appropriate manner. Id. If he received a letter from an inmate, his assistant would review the letter and provide the letter to the facility investigator, who would handle the issues raised therein. Id. For issues like those presented here, he believes the facility investigator similarly would have provided the complaint to the unit manager for the inmate's housing unit and that he would have asked the unit manager to handle the complaint in an appropriate manner. The fact that an inmate did not receive a written response to what he submitted to me does not mean that I or someone acting at my direction did not address the issue. Id. pp. 1-2.

Vantell attested that he did not ignore Reese's requests for help, as the short amount of

6

time between when Reese requested help and when Reese was transferred to a different housing unit effectively establishes that a member of the security team requested Reese's transfer to provide for his safety and security. Id. at p. 3  He would not ignore an inmate in Reese's position, would not ignore Reese's requests for protection, and would not disregard any danger to Reese that he perceived. This was a proper course because it placed concrete walls and locked doors between Reese and his aggressors. Id. at p. 3.

Inmates are not permitted to freely move from one housing unit to another or enter housing units to which they are not assigned unless under limited circumstances, for example if an inmate is a member of the maintenance crew. Id.  Thus, inmates from Unit Delta Bravo should not have been permitted to enter Unit Delta Alpha, and he would not have instructed security personnel to permit this conduct and would not have condoned this conduct. Id. He was not personally responsible for permitting inmates to enter or exit housing units. This is the responsibility of correctional officers.  Id. at p. 3.

Plaintiff responded, opposing the motion and reiterating the allegations in his complaint. Docket No. 32.  He submitted a response to Defendants' Statement of Undisputed Material Facts ("SUMF"), claiming that six of the seven factual statements in Defendants' SUMF are disputed and providing a brief explanation why he contends these factual statements are disputed. Docket No. 33.  His response does not contain citations to the record.  Plaintiff also references a document titled "Questions for the Following Authority Figures," which he asserts is attached to his Complaint.[3]  Docket No. 33, p. 3.

Defendants replied, contending the material facts should be deemed undisputed because

---

[3] The undersigned finds no such document attached to his Complaint or elsewhere as part of the record.

7

Case 3:23-cv-01054   Document 35   Filed 11/12/25   Page 7 of 13 PageID #: 180

Plaintiff's response does not contain citations to the record. Docket No. 34, pp. 1-4. They argue that with the factual statements in the SUMF deemed undisputed, the evidence presented establishes the absence of a genuine dispute of material fact. Id. at p. 4. They note that Reese has not presented evidence to establish otherwise, only his own unsupported allegations. Id.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant must show through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "When opposing parties tell two different stories, [however,] one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [we need] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Local Rule 56.01(g) provides that "[i]f a timely response to a moving party's statement of material facts is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." Local Rule 56.01(g). The court reminded Reese of this requirement in its case management order. Docket No. 21. In responding

8

Case 3:23-cv-01054    Document 35    Filed 11/12/25    Page 8 of 13 PageID #: 181

to Defendants' SUMF Reese disputed six of the seven factual statements but without any record citation to evidence. Docket No. 33. And although Reese references a document titled "Questions for the Following Authority Figures" which he contends is attached to his Complaint, the undersigned finds no such document as part of the record. Accordingly, the court in its discretion will deem Defendants' factual statements undisputed for purposes of this motion.

B. **Defendants' Supervisory Liability**

It is undisputed that all defendants held supervisory positions at Trousdale during the relevant time. To succeed on a claim based on supervisory liability claim to succeed, Reese must show that defendants were actively involved in offensive conduct, and that his conduct caused his injuries. *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021). "To succeed on a supervisory liability claim, a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Id. at 761 (cleaned up). This requires active unconstitutional conduct by the supervisor because supervisory liability will not attach for a failure to act. Id.

Here, Reese contends that inmates from Unit Delta Bravo purportedly were able to enter Unit Delta Alpha. He does not contend that Defendants themselves permitted unauthorized inmates to move from one housing unit to another. To hold Defendants liable, Reese must prove Defendants: (1) personally encouraged or participated in permitting inmates to move from one housing unit to another; or (2) implicitly authorized, approved, or knowingly acquiesced in permitting inmates to move from one housing unit to another. *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006) (a supervisory official's failure to control, supervise, or train is not actionable unless the supervisor encouraged the specific incident or misconduct or directly participated in it.

Reese has presented no evidence that Defendants directed any subordinate to act in a way that violated his rights or that they authorized or acquiesced in any unconstitutional conduct. The evidence demonstrates Defendants were not personally responsible for permitting inmates to enter or exit housing units and that it was the responsibility of correctional officers. Docket No. 29, p. 2, Docket No. 30, p. 3, Docket No. 31, p. 3. Inmates at Trousdale are not permitted to freely move between housing units to which they are not assigned unless under limited circumstances. Docket No. 29, pp. 2-3, Docket No. 30, p. 2, Docket No. 31, p. 3. Inmates from one housing unit should not have been permitted to enter another housing unit, and Defendants would not have instructed security personnel to permit this conduct and would not have condoned this conduct. Id.

Reese has presented no evidence to establish that Defendants encouraged or participated in permitting inmates to move freely between housing units. Nor has he presented any evidence that Defendants directed any subordinate to act in a way that violated his rights or that they authorized or acquiesced in any unconstitutional conduct. Accordingly, summary judgment should be granted in defendants' favor on Plaintiff's claims against Defendants based on a theory of supervisory liability.

    **C.**    **Deliberate Indifference – Failure-to-Protect Claim**

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court has held that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That duty, among other things, requires those officials to take reasonable measures to "'protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Cortez-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part

of the penalty that criminal offenders pay for their offenses." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To prevail on a failure-to-protect claim, Reese must make two showings. First, he must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The second requirement concerns the state of mind of the prison official who is being sued. The plaintiff must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (cleaned up).

Here, the uncontroverted evidence demonstrates Defendants acted in response to Reese's complaints on August 4, 2023. Reese was transferred from Unit Delta Bravo to Unit Delta Alpha two days later, on August 6, 2023. Docket No. 29, pp. 2-3, Docket No. 30, p. 2, Docket No. 31, pp. 2-3. Reese does not contend that he was subjected to threats or violence during the interim two-day period. The evidence therefore shows Defendants thus did not ignore Reese's requests for help, as the brief period between Reese's request for help his transfer to a different housing unit effectively demonstrates that a member of the security team, Porter, Smith, or Vantell, requested Reese's transfer. Moving Reese to a different housing unit following the August 4, 2023, incident was a reasonable response to his complaints, and Defendants cannot be held liable under the Eighth Amendment considering that response. *See McCurry v. Duncan*, 2019 WL 3409901, at *2 (S.D. Ill. May 31, 2019), report and recommendation adopted, 2019 WL 2560038 (S.D. Ill. June 21, 2019) (granting summary judgment on a failure to protect claim where the inmate's

prompt transfer to a different housing demonstrated that potential threats to his safety were taken seriously by prison officials).

To the extent Reese is asserting that his letter to Warden Vantell establishes deliberate indifference, this claims fails. An inmate "cannot manufacture a deliberate indifference claim against the warden based on a letter writing campaign." *Sedore v. Burt*, 2019 WL 4740589, at * 15 at n.10 (W.D. Mich. Sept. 12, 2019). A warden likewise is not deliberately indifferent by having his assistant review inmate complaints and refer them to department heads. *McCracken v. Haas*, 324 F. Supp. 3d 939, 951-52 (E.D. Mich. 2018).

As to Reese's assertion that unidentified medium-custody inmates from Unit Delta Bravo were still able to reach him in Unit Delta Alpha, his assertion does not establish deliberate indifference on the Defendants' part because the evidence established that at Trousdale it is appropriate to house minimum and medium-custody inmates together. To the extent that Reese contends that the four inmate assailants were wrongly permitted to move from one housing unit to another, the Defendants presented evidence that they were not personally responsible for controlling inmate movement from one housing unit to another and therefore could not have been deliberately indifferent to a responsibility not their own. Docket No. 29, pp. 2-3, Docket No. 30, p. 2, Docket No. 31, pp. 2-3.

For these reasons, summary judgment should be granted to Defendants on Reese's claims against them.

### III. CONCLUSION

Consistent with the above, the undersigned recommends that defendant's motion for summary judgment (Docket No. 26) be **GRANTED**, and this action be **DISMISSED** .

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days

12

Case 3:23-cv-01054 Document 35 Filed 11/12/25 Page 12 of 13 PageID #: 185

from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**